### CHARLES STEARNS & another *vs.* JOHN DOE.

Evidence of the name and place painted on the stern of a vessel is admissible to show to what port she belongs.

A master of a vessel in a foreign port where there is no consignee, and he has no other means, has authority to pledge the credit of the owners for money needed to pay the officers and crew.

A person who lends money in Boston on the credit of the owner to the master of a vessel owned in New York, for the payment of officers and crew, in the absence of any consignee or other means, may recover the amount of the owner, if the money is necessary for the purpose, and lent in good faith, and after due diligence to ascertain the necessity; and the questions of the necessity, good faith and diligence are for the jury.

ACTION OF CONTRACT against the owner of the barque Edwin, to recover for money lent for and on his account to the master of the vessel. Trial in the superior court of Suffolk at May term 1858, before *Morton*, J., who signed the following bill of exceptions :

" The plaintiffs claimed that the Edwin was a foreign vessel, owned in and sailing from the port of New York, and that the money was lent in Boston, at a time when it was necessary for the payment of her crew. To prove that she was a foreign ves-

sel, the plaintiffs offered to show that she had the words ' Barque Edwin of New York ' painted on her stern, as required by the laws of the United States. The defendant objected to this tes-timony, on the ground that the ownership of the barque and the place where she belonged should be proved by the custom house register, and that parol testimony was not admissible to show these facts. But the court overruled the objection, and admitted the testimony.

" The plaintiffs called witnesses who testified that the barque Edwin was a New York vessel, owned by the defendant. The defendant objected to this testimony, on the grounds above stated. But the court overruled his objection, and admitted the testimony.

" The only testimony to prove the loan and the circumstances attending it was that of Caleb Eaton, one of the plaintiffs, who testified that he knew the barque Edwin and her master, Captain Matthews, and had known him for two years ; that in the last of July 1857 the barque was at Battery Wharf in Boston, with a full cargo, which the captain had just commenced discharging that he knew Captain Matthews to be master, because he told him so, and because he had seen him on board the barque, acting in the capacity of master; that the vessel had cleared from New York about a year before ; he had seen her clearance in a news paper, and Captain Matthews told him he had been gone about a year; that in the latter part of July the captain applied to the plaintiffs for a loan, representing that he needed the money at once to pay off his officers and crew, that he had no money or means, and that there was no consignee or agent of the owner in this port, but that he did all the business for the owner ; that the plaintiffs thereupon lent him the money in suit on account of the barque Edwin and owners, and took his receipt therefor; and that there were no circumstances or facts to lead him to suspect that the money was not needed immediately, or that the captain could procure it elsewhere.

" The defendant's counsel then objected to the plaintiffs' right to recover, and moved for a nonsuit, upon the following grounds: 1st. That on the evidence it does not appear that this vessel

was a foreign vessel. 2d. That there was not in the evidence reasonable diligence used by the plaintiffs to' ascertain whether this money was necessary. 3d. That in the facts disclosed no such necessity is shown to have existed as authorized the captain to borrow this money. 4th. That assuming on' the evidence that the vessel belonged in New York, the distance and means of communication are such that the master could have applied to the owner, and therefore no necessity existed to borrow this money. 5th. That the master was not authorized to borrow money to pay for work already done. 6th. That the master's authority is limited by the necessity of the case; he cannot make the owner responsible for money not actually necessary for those purposes, although he may pretend it is; and on the evidence no such necessity is shown to exist. But the court overruled the objections and motion.

" The case was then argued to the jury by the respective counsel; and the defendant's counsel asked the court to instruct the jury, that if the jury are of opinion that the cargo could have been discharged and the freight collected on or before the day when the money was borrowed, no necessity existed for borrowing, and the defendant is not liable; that if the captain could have raised the money by advances from the consignees, then he was not authorized to borrow, and the defendant is not liable; that the burden of proof is on the plaintiffs to show that there existed an actual necessity for the money for the use of the vessel, that the captain could not have raised the money in any other manner, and that the captain or the plaintiffs could not have communicated with the owner without great prejudice and delay; and if they fail to satisfy the jury in all these points, the verdict must be for the defendant.

" But the court declined to give the instructions as prayed for by the defendant, and, upon the whole case, instructed the jury, that if the vessel was a foreign vessel and in a foreign port, and there was an apparent ·necessity for money to be advanced immediately for the necessary disbursements here; and if the owner had no agent or consignee in this port, and the master had no means or money of his own or of the defendant; and

if the plaintiffs in good faith advanced to the master for that purpose a sum of money; and if the plaintiffs used reasonable care and diligence to ascertain whether or not the advances were necessary to be made at that time, and there were no facts or circumstances in the transaction, or which could have been ascertained upon a reasonable and prudent inquiry, to lead to a suspicion of the contrary; then the plaintiffs would be justified in lending money to the master under such circumstances upon the credit of the owner; and that the burden of proof was upon the plaintiffs to satisfy the jury on all these points.

" The court also instructed the jury that the ports of the several states of the Union were, as to each other, foreign ports; that if they were satisfied that the barque Edwin was a New York vessel, then, when in Boston, she was in a foreign port within the meaning of the above instructions; that the nearness of the two ports and the facility of communication between them were proper to be considered by the jury in determining the question whether there existed an apparent necessity for the advances to be made immediately, and whether the plaintiffs used due diligence to ascertain whether or not such advances were necessary, but were not, of themselves, conclusive as to the liability of the defendants.

" The jury returned a verdict for the plaintiffs. And to the foregoing rulings, instructions and refusals to instruct, the defendant excepts."

*H. W. Paine & T. F. Nutter*, for the defendant. The evidence of the words painted on the stern of the vessel should have been excluded. If the port where a vessel is registered determines her character as a foreign vessel, there was better evidence accessible to the plaintiffs — an authenticated copy of the register. Her port of enrolment may have been changed without altering the words on her stern. But it was immaterial at what port she was registered, for her character as a foreign vessel depends upon the place of residence of her owners. *The Golden Gate.* Newberry, 308.

The plaintiffs, at the time of making the loan, knew that there was no such necessity as authorized the master's borrowing

money on the credit of the owners; but that the money was wanted to pay debts already contracted; not to procure repairs or supplies to enable the vessel to pursue her voyage. A master has no authority to pledge the credit of the owners for a debt already contracted. *Beldon* v. *Campbell*, 6 Exch. 886. *Robinson* v. *Lyall*, 7 Price, 592. There could be no apparent necessity of money for the purposes for which the master declared that he wanted it. Under the instructions the jury were allowed to find that a necessity existed, when in law it did not. As all the evidence is reported, the court may upon this bill of exceptions correct the error. *Chase* v. *Breed*, 5 Gray, 440.

*M. Dyer, Jr.,* for the plaintiffs.

BIGELOW, J. It was not necessary to produce the register of the vessel or a certified copy of it to prove that the defendant was owner. Evidence of possession and acts of ownership were clearly competent. Abbott on Shipping, (7th ed.) 91. 1 Greenl. Ev. § 494. *Weston* v. *Penniman*, 1 Mason, 318. So also was it admissible to show that the name of a port or place was painted on the stern of the bark. By the acts of congress it is expressly required that every registered and enrolled vessel shall have her name and the port to which she belongs painted in legible characters on her stern. U. S. Sts. 1792, *c.* 38, § 3 ; 1793, *c.* 46, § 11. As it is fair and reasonable to infer that the owner has complied with the requirements of law, the fact that the name of a port is painted on the stern of the vessel affords *prima facie* evidence of the residence of her owner.

The instructions given to the jury were sufficiently full and accurate and well adapted to the case. The authority of a master to borrow money in a foreign port, on the credit of the owner, in his absence and where there is no agent or consignee of the vessel, is clear and unquestionable. The limitation on this authority is equally clear. The money must be necessary for the vessel; that is, it must be required for purposes which a prudent person would deem to be reasonably fit and proper under the circumstances in which the vessel is placed. But we do not understand that a master can in no case borrow money on the credit of the owner to pay an existing liability, or a debt

already incurred. There may be such a 'limitation on his authority where repairs have been done or supplies furnished on the personal credit of the owner, and without any stipulation for payment in ready money. *Beldon* v. *Campbell*, 6 Exch. 886. But no such restriction on the power of the master exists where a debt has been duly contracted, which constitutes a lien on the vessel or cargo, capable of immediate enforcement in a foreign port. On the contrary, in such cases the master would have power even to give a pledge of the vessel by way of bottomry, and *a fortiori* to pledge the personal credit of the owner of the vessel. *The Alexander*, 1 Dods. 280. *The Vibilia*, 1 W. Rob. 1. The questions whether the money was necessary under the circumstances in which the vessel was situated at the time of the loan, and whether the master's position was such as to constitute him the authorized agent of the owner to borrow money, were proper for the consideration of the jury. *Johns* v. *Simons*, 2 Ad. & El. N. R. 425. *Arthur* v. *Barton*, 6 M. & W. 138. And they were submitted to them under instructions to which we can see no valid objection.

*Exceptions overruled.*